IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STONE CREEK CONDOMINIUM
OWNERS ASSOCIATION, INC.,

          Plaintiff,

v.

THE CHARTER OAK FIRE INSURANCE
COMPANY,

          Defendant.

OPINION AND ORDER

19-cv-862-wmc

---

Plaintiff Stone Creek Condominium Owners Association, Inc. (the "Association") brings contract and bad faith claims against The Charter Oak Fire Insurance Company ("Charter") for allegedly breaching the terms of its insurance policy. Plaintiff also seeks a declaratory judgment requiring defendant Charter to engage in an appraisal process set forth in its policy. Before the court is defendant's motion to dismiss plaintiff's claim for declaratory relief. Based on the parties' requests in their respective briefs, the court will convert defendant's motion as one for partial summary judgment, and consider it along with plaintiff's cross motion for partial summary judgment as to its claim for declaratory relief. (Dkt. ##12, 19.) For the reasons that follow, however, the court must deny both parties' motions, finding an issue of material fact as to whether defendant Charter actually relied on coverage disputes in refusing to engage in the appraisal process. Accordingly, plaintiff's claim for declaratory relief will have to await trial, along with plaintiff's broader claims for breach of contract and bad faith.

UNDISPUTED FACTS[1]

A. **Overview of the Parties**

Plaintiff Association is a Wisconsin, non-stock corporation with its principal office located in Middleton, Wisconsin, and a homeowner's association related to the Stone Creek condominium development also located in Middleton. That development consists of twenty multi-unit buildings.

Defendant Charter issued two, one-year insurance policies to the Association, which were each effective for an uninterrupted period between December 14, 2015, and December 14, 2017.

B. **Key Provisions of Policies**

The policies covered direct physical loss of or damage to defined "property" occurring during the policy period, subject to all terms, conditions, limitations, and exclusions set forth in the policies. Material to the parties' dispute, the policy also provides the following "appraisal" provision:

> If [Charter] and [the insured] disagree on the value of the Property, the amount of Net Income and operating expense or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense or the amount of loss. If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding.

---

[1] Unless otherwise noted, the court finds the following facts material and undisputed.

> Each party will:
> a.  Pay its chosen appraiser; and
> b.  Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, [Charter] will still retain our right to deny the claim.

(Pl.'s PFOFs (dkt. #21) ¶ 29; Def.'s Add'l PFOFs, Ex. 1 (dkt. #27-1) 73.)  The policies further require that an insured file any lawsuit against Charter within two years of the date of the loss.

### C. 2016 Claim

The Association suffered property damage from a hail-producing storm on September 19, 2016.  Plaintiff timely submitted a claim for this damage, and on May 10, 2017, Charter provided the Association with an estimate of the cost of repair, consisting of a replacement cost value ("RCV") of $15,245.22 and an actual cash value ("ACV") of $12,858.08.  However, the estimate only noted damage to four of the twenty buildings, and it did not describe any damage to any roof.  While the parties do not propose any facts about the resolution of this 2016 claim, it appears at some point that Charter may have paid some amount for this damage.

### D. 2018 Claim

The Association hired Paladin Construction, LLC, to replace the roofs of certain buildings in August of 2017.  Upon inspection, Paladin observed extensive hail damage to the roofs and other portions of the buildings *not* included in the 2016 claim estimate.  Charter does not dispute that Paladin made these observations, but disputes the extent of

the claimed damages, directing the court to a report from Roofing Consultants Ltd. that notes only minor damage to certain soft metals and a few ridge shingles.

On or about September 11, 2018, the Association hired The Adjustment Firm Inc. ("TAF") to serve as its public adjuster on an insurance claim. Also, on September 11, Jack Hansen with TAF requested a sixty-day extension with Charter of the two-year filing bar under the policies to resolve any outstanding issues presented by the discovery of hail damage. While Charter granted the requested extension, its employee Robert Haislip noted in his response to TAF that Charter "had a roofing consultant on this claim and all of the hail damage was addressed, so I'm curious to see what the roofer is claiming we did not address properly . . . ." (Pl.'s PFOFs (dkt. #20) ¶ 16 (quoting Hansen Decl., Ex. A (dkt. #23-1) 3.)

On November 7, 2018, Hansen requested another extension of the filing bar "so that the appropriate amount of time may be given for this claim to be reinspected." (*Id.* ¶ 19 (quoting Hansen Decl., Ex. B (dkt. #23-2).) Charter's adjuster Kimberly Burnell responded the next day with the following email:

> Thank you for the information. In reviewing the hail reports, there have been 12 hail events since our inspection in October 2016. With that being said, there is no way for us to reinspect what damages were there at that time. The [A]ssociation should report a new claim and use the hail date that was closest to the date of the inspection by the contractor. Please let me know when the new claim is reported. I can attach these documents to that file as well.

(*Id.* ¶ 20 (quoting Hansen Decl., Ex. B (dkt. #23-2)).)

Also on November 8, 2018, Hansen provided Burnell with an estimate of the hail damage at the Association. Charter does not dispute that the estimate was provided, but

disputes the cause, date and extent of damage. The TAF estimate stated both the RCV and ACV of the hail damage to be $1,963,617.83. Here, too, Charter does not dispute that the estimate contains these figures, but disputes that these amounts accurately reflect the amount of covered loss. Around this same time, consistent with Burnell's direction, the Association submitted a new claim with a date of loss of June 16, 2017. Charter does not dispute that the Association submitted this claim, but disputes that the damage occurred on June 16, 2017.

Charter provided the Association with an estimate and a statement of loss both dated March 15, 2019, in which it asserted that the RCV damage related to the 2017 claim was $547,960.80 and the ACV was $358,709.86. The estimate included replacement of aluminum siding on all elevations of Building Nos. 12-19, soft metal stack vents, roof vents, ridge caps throughout the property, and a small number of ridge shingles on two of twenty roofs. The estimate did not identify any damage to the roofs of the Association's buildings, instead indicating that this category of damage was "pending inspection." (Compl., Ex. C (dkt. #1-3) 77-213.) After Hansen objected to the estimate not identifying any damage to the roofs of the building, Charter conducted a re-inspection of the property. In an email dated May 24, 2019, Charter responded,

> Based on prior claim E8K8808 [the 2016 claim] and the outlined damage from this report, the additional roof damage for the current claim is to the following:
>
> Stack vents-30
> Roof vents -23
> Ridge caps-5
> Valley-1
>
> I will add the metals and shingles to the estimate, but these

>items should be able to be repaired.
>
>Also noted was that the gutters were dented on E8K8808 and would not be part of this claim as they were previously damaged.

(Pl.'s PFOFs (dkt. #20) ¶ 26 (quoting Hansen Decl. (dkt. #23) ¶ 15).)

Charter then provided the Association a second estimate for the 2018 claim dated June 6, 2019, in which is asserted that the RCV of the damage was $551,572.78 and the ACV was $362,322.14. Also, on June 3, 2019, the Association requested a third 90-day extension of the filing bar, to which Charter agreed. (Pl.'s PFOFs (dkt. #20) ¶ 36 (citing Hansen Decl., Ex. C (dkt. #23-3) 1).)[2]

### E. Appraisal Request and Response

In a letter from TAF to Charter dated July 31, 2019, the Association demanded that the parties proceed with an appraisal of the loss under the policies. Charter responded to that demand by letter dated August 21, 2019. In the letter, Jeff Heywood, a General Adjuster for Charter, explained that Roofing Consultants inspected "the roofs to verify the presence of hail damage," but that the "inspection found isolated, minor and repairable hail-induced damage to hip and ridge shingles on two of the twenty buildings as well as metal roofing accessories on additional buildings." (Compl. (dkt. #1-3) 214.) Heywood also noted that "[a] hail history report obtained by Roofing Consultants did not identify any hail activity at the property in 2017 or 2018. According to the report, the most

---

[2] Although defendant concedes its agreement to a so-called "2017 claim" only, plaintiff's witness is explicit that the agreement was as to all claims, and at least as to defendant's motion, the court must accept that evidence in the light most favorable to plaintiff.

6

significant hail event took place in 2016[,] which was [the] subject of a prior claim." (*Id.*)

The letter then discusses the Association's appraisal demand, including quoting the relevant provision in the policy, but notes that "[t]he policy provides that appraisal is only as to the amount of the loss, not whether a loss has occurred or whether it is covered under the policy." (*Id.* at 215.) The letter further states, "[y]our letter does not explain the reason(s) for the dispute or specify the items that are disputed." (*Id.*) As such, Charter requested that the Association provide answers to four issues:

> (1) Whether you disagree with how we have priced the areas for repair or replacement . . . . If so, please specify those areas of disagreement;
> (2) Whether you are contending that additional undamaged areas of roofing must also be replaced to complete the repairs authorized in [Charter's] estimate. If so please specify the basis for your position;
> (3) Whether "matching" is the basis for the dispute, in whole or in part. "Matching" arises when the original material for a component of the building that requires repair is no longer available on the market and there is a dispute as to whether comparable material on the market readily matches the undamaged areas of the building component. If so, please provide the basis for your "matching" position;
> (4) Whether you are contending that [Charter's] estimate does not include the roofs or portions of roofs that were damaged by hail during the policy period. If so, please specify which roofs or portions of roofs you contend are damaged by hail on the claimed date of loss, and provide all the facts and evidence supporting your position.

(*Id.*)

The letter next states that Charter

> is willing to submit to appraisers any disputes in categories (1) and (2) in the preceding paragraph, if there is a disagreement. [Charter] will not submit coverage issues to appraisal. Category (3) ["]matching" is a potential coverage issue

> depending on the basis for any "matching" claim. Category (4) is a coverage issue involving causation.

(*Id.* at 215-16.) Charter then identifies its appraiser "subject to receipt of further confirmation from you as the identity and basis for the items you wish to have [appraised]." (*Id.* at 216.) Charter also notes that its appraiser, Raymond A. Pawlak, is being paid on an hourly basis, and it asks TAF to "disclose you and/or your client's agreement with Mr. Miller." (*Id.*) Finally, Charter requested a reply within 14 days.

### F. Current Lawsuit

Rather than reply, the Association instead filed the present lawsuit in the Dane County Circuit Court on September 16, 2019. The Association does not dispute that its suit was not timely if the policies' two-year filing bar applies, at least to its 2016 claim, but contends that Charter waived or is estopped from relying on this provision to argue that its claim is time-barred. Defendant also points out that the contract contains a duty to cooperate. (Def.'s Add'l PFOFs (dkt. #27) ¶ 4.) While this provision may be relevant to plaintiff's breach of contract claim, it does not appear to be relevant to the declaratory judgment claim, or at least defendant has failed to explain its relevance. Regardless, Charter removed the lawsuit to this court, asserting diversity jurisdiction under 28 U.S.C. § 1332(a), which appears proper as: plaintiff is a citizen of Wisconsin; defendant is a citizen of Connecticut; and the amount in controversy exceeds $75,000. (Not. of Removal (dkt. #1) ¶¶ 4-7.)

OPINION

Plaintiff asserts the following causes of action: (1) declaratory judgment that defendant violated the terms of the policy by not allowing the appraisal panel to set the amount of loss at issue; (2) breach of contract for defendant's failure to timely pay the proper amount for hail damage; and (3) bad faith based on defendant's failure to pay and refusal to allow the loss to go to appraisal. As described above, the parties' cross motions *only* concern the declaratory judgment claim concerning the appraisal provision. In its motion, defendant principally argues that it did not violate the terms of the appraisal provision by refusing to engage in that process because: (a) there was a dispute as to the cause of the damage; and (b) the appraisal process was limited to resolving disputes about the amount of loss. In response, plaintiff disagrees with defendant's view of the law, arguing that the arbitration panel could also determine causation.

This court recently considered a similar dispute over a property insurance policy's appraisal provision, which also involved hail damage. As explained in *Beer v. Travelers Home & Marine Ins. Co.*, No. 19-CV-306-WMC, 2020 WL 5095470 (W.D. Wis. Aug. 28, 2020),

> Wisconsin courts considering similar appraisal provisions have held that the process can only resolve disputes over the amount of loss, rather than be used to determine the existence of coverage itself. *See St. Croix Trading Co./Direct Logistics, LLC. v. Regent Ins. Co.*, 2016 WI App 49, ¶ 14, 370 Wis. 2d 248, 882 N.W.2d 487 (holding that an appraisal panel should only consider the amount of loss and cannot consider questions of coverage); *Farmers Auto Ins.*, 2009 WI 73, ¶ 42 ("An appraisal process is an agreement by parties to a contract to allow third party experts to determine the value of an item."); *Gronik v. Balthasar*, No. 10-CV-00954, 2014 WL 2739333, at *3 (E.D. Wis. June 17, 2014) ("The goal of an appraisal is to resolve valuation disputes over the amount of loss. All other disputes, including whether the claimed loss

9

> is covered by the contract, are left for resolution by negotiation
> or litigation." (citing to *Lynch v. Am. Family Mut. Ins. Co.*, 163
> Wis. 2d 1003, 1009–10 (Ct. App. 1991)).

*Id.* at *7-8. As such, the court agrees with defendant that the appraisal provision at issue in the declaratory judgment claim is similarly limited to determining the amount of loss, and does not include resolving coverage disputes, including whether damage to plaintiff's roofs was caused by a hail storm within the coverage period. That is a disputed issue of fact for trial.

Still, in plaintiff's own motion for summary judgment, the Association appears to shift its theory, arguing that defendant did not *actually* raise legitimate, coverage disputes in its response to plaintiff's invocation of the appraisal provision, but instead merely requested a "clarification" that amounted to no more than a stalling tactic to avoid the costs of appraisal. A reasonable jury may agree with plaintiff, but this issue also involves disputed factual findings that are not appropriate for resolution at the summary judgment stage. In particular, a jury will need to consider whether defendant credibly raised a dispute as to coverage in challenging the alleged date of loss. In turn, this determination will require the jury to consider whether defendant waived any date of loss challenge by Burnell's instruction to "report a new claim and use the hail date that was closest to the date of the inspection by the contractor." (Hansen Decl., Ex. B (dkt. #23-2).) As such, a jury will be necessary to consider plaintiff's declaratory judgment claim in conjunction with its breach of contract and bad faith claims.

Finally, as the court noted above, the parties' motions were limited to a single claim and did not bring to a head other glaring, disputed issues of mixed fact and law -- for

example, whether claims for coverage based on original damages from the 2016 hail storm are time-barred. In advance of submitting motions in limine, proposed jury instructions, and their exhibit lists, the parties should consider whether additional progress could be made in stream-lining and clarifying these issues for the jury.

ORDER

IT IS ORDERED that:

1) Defendant The Chart Oak Fire Insurance Company's motion to dismiss (dkt. #12) is DENIED.

2) Plaintiff Stone Creek Condominium Owners Association, Inc.'s motion for partial summary judgment (dkt. #19) is DENIED.

Entered this 2nd day of February, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge